IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KENDELLE Y. DANIELS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 4:12-CV-92 (MTT) |
| ) | |
| STEBBINS ENGINEERING AND ) | |
| MANUFACTURING COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# ORDER

This matter is before the Court on the Defendant's motion for summary judgment. (Doc. 39). The Plaintiff did not file a response to the Defendant's brief in support of its motion or the Defendant's statement of material facts. Thus, the Court finds that the facts as set forth by the Defendant in its statement of material facts (Doc. 41) are admitted. M.D. Ga., L.R. 56. The Court has also reviewed the record and finds the facts undisputed. For the following reasons, the motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

Plaintiff Kendelle Daniels, an African-American male, began working for Defendant Stebbins Engineering and Manufacturing Company on Tuesday, August 2, 2011.[1]  (Doc. 41 at ¶¶ 1-3). Daniels was hired as a laborer to work at Georgia Power's Plant Scherer site in Juliette, Georgia.  (Doc. 41 at ¶ 6).  He was assigned to a team that pumped concrete through a hose to create walls at the plant.  (Doc. 41 at ¶ 8).

---

[1] During his orientation, Daniels was provided with a copy of Stebbins's Equal Opportunity and Sexual Harassment Policy, and Daniels signed an acknowledgement of that policy.  (Doc. 41 at ¶ 7).

Richard Winter, Daniels's Caucasian supervisor, often threatened his employees with termination and told them to go home if they did not like their jobs. (Docs. 41 at ¶ 14; 43 at 25:17-25). Winter threatened to fire all of his subordinates without targeting any particular ethnic group or race. (Doc. 41 at ¶ 21). However, Winter and Daniels were apparently friendly with each other, and they joked together during lunchtime by calling each other names. (Doc. 43 at 44:24-25, 45:1-12).[2]

On August 4, Daniels approached Isadore Andrews, an African-American coworker who supervised members of the iron workers union at the Scherer plant. (Doc. 41 at ¶¶ 10, 12, 26). Andrews did not supervise or work directly with Daniels. (Doc. 41 at ¶ 11). Daniels asked Andrews if he needed any help, and Andrews asked Daniels if he was an iron worker. (Doc. 43 at 29:9-16). Daniels responded that he was previously a member of the iron workers union but that he was no longer a member because he could not go to school to get necessary further training. (Doc. 41 at ¶¶ 30, 32). Daniels then went on to tell Andrews that he was removed from the union because of an incident that occurred while Daniels was working in the Local 387 at the Centers for Disease Control in Atlanta as a first-year apprentice. (Doc. 41 at ¶¶ 29, 33). He explained that while working at the CDC his Caucasian supervisor improperly rigged a piece of equipment which caused the equipment to fall. (Doc. 41 at ¶ 34). Daniels further told Andrews that the supervisor blamed Daniels for the incident and called him "a stupid nigger." (Doc. 41 at ¶ 35).

---

[2] Daniels called Winter "a Mexican" based on Winter's appearance, although Daniels was not sure of Winter's race, and Winter called Daniels "a little leprechaun" due to Daniels's height. (Doc. 43 at 44:24-25, 45:1-18).

After Daniels finished his explanation, Andrews told Daniels he was "a stupid ass nigger" because he could have "owned the job, the company or whatever[,]" apparently meaning that Daniels could have brought a successful lawsuit based on his former supervisor's use of that epithet.  (Doc. 43 at 33:11-18).  Daniels did not respond to Andrews and walked away.  (Doc. 41 at ¶ 39).

The following day, Andrews called Daniels over to join a conversation with Alvin Terry, an African-American laborer.  (Docs. 41 at ¶ 40; 43 at 44:13-14).  Andrews repeated the epithet to Terry while pointing at Daniels.  (Doc. 44 at 17:10-20).  Terry believed Andrews was joking, finding the epithet humorous, but Terry did not find Andrews's remarks funny and later told Daniels to report Andrews's behavior.  (Doc. 44 at 18:9-14).  Terry only heard Andrews use the epithet once, and he did not hear any other coworkers use it during his employment with Stebbins.  (Doc. 44 at 18:20-25, 22:2-4).

Daniels did not work on Saturday or Sunday and returned to work the following Monday, August 8.  (Doc. 41 at ¶¶ 4, 5).  Andrews repeated the epithet to Daniels once after the morning meeting at the job site.  (Doc. 43 at 39:16-18).  A different coworker overheard Andrews's remark and told Daniels he needed to stop Andrews from calling him that before others began to use that language as well.  (Doc. 41 at ¶ 49).  But Daniels did not say anything to Andrews, and he did not report Andrews's remarks.  (Doc. 43 at 40:11-15).

Later that day, Daniels worked with another laborer to seal concrete on a wall.  (Doc. 41 at ¶ 52).  Daniels alleges the other laborer damaged the wall while attempting to seal it, and Daniels was going to help him repair it.  (Doc. 43 at 47:1-5).  Winter came

by and observed the damaged wall.  However, the other laborer had walked off, and Winter did not see the other laborer cause the damage.  (Doc. 43 at 47:5-8, 20-22).  Winter apparently assumed Daniels damaged the wall.  Winter instructed Daniels to fix the wall and then grab his lunch and go to Winter's truck.  (Doc. 41 at ¶ 56).  Daniels responded that he would not fix the wall if Winter was planning to fire him, and Daniels walked over to Winter's truck.  (Doc. 43 at 47:17-19).

Winter informed Daniels he was being terminated for performance reasons.  (Doc. 41 at ¶ 58).  Andrews had no part or role in Daniels's termination.  (Doc. 41 at ¶ 57).  Only after Winter told Daniels that he was terminated did Daniels tell Winter about Andrews use of the racial epithet.  (Doc. 41 at ¶ 59).  Winter then drove Daniels to the plant's front gate.  (Doc. 41 at ¶ 60).

At the gate, Daniels complained to Georgia Power's security guard about racial harassment.  (Doc. 41 at ¶ 61).  Georgia Power then informed Stebbins of Daniels's allegations.  (Doc. 41 at ¶ 62).  Stebbins's Human Resources Director, Margaret LaVancha, investigated Daniels's claims.  LaVancha interviewed Daniels, Andrews, and Winter.  (Doc. 45 at ¶¶ 4-5).  Daniels refused to provide LaVancha with the names of his two coworkers who witnessed Andrews's use of the racial epithet.  (Doc. 45 at ¶ 7).  Daniels also threatened to personally hurt Andrews during his interview with LaVancha.  (Doc. 45 at ¶ 6).  LaVancha concluded from her investigation that Daniels's version of events "was incomplete, inaccurate, and at times was contradictory[,]" and the investigation did not reveal that any discrimination or harassment had occurred.  (Doc. 45 at ¶ 9).

Daniels filed his complaint (Doc. 1) and amended complaint (Doc. 12) pro se. While Daniels brought his amended complaint pursuant to Title VII and his amended complaint sets forth the relevant facts, it does not identify his precise claims. Accordingly, Stebbins has moved for summary judgment on what appear to be the most relevant claims considering Daniels's allegations.  The Court agrees, based on a liberal construction of Daniels's amended complaint, these are the most appropriate claims.

## II.  DISCUSSION

### A. Motion for Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party does not satisfy his burden "if the rebuttal evidence is 'merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255 (citation omitted).

### B. *McDonnell Douglas* Framework

A Title VII plaintiff may prove his case directly or circumstantially.  Here, there is no direct evidence of discrimination, so Daniels must rely on circumstantial evidence.[3]  The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]  Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Tex. Dep't of Cmty.*

---

[3] According to Daniels's testimony, the only person to use the racial epithet, other than himself, was Andrews.  Andrews did not play a role in Daniels's termination.  Rather, Winter was the sole decision-maker in that regard, and Daniels has not alleged any direct evidence of Winter's discriminatory intent.

[4] The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff can always avoid summary judgment by creating a triable issue concerning the employer's discriminatory intent.  A plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  However, Daniels has not presented such evidence and does not meet *Lockheed-Martin's* standard.

*Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence to raise a genuine factual dispute as to whether it discriminated against the plaintiff.  *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination.  "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Id.* (quoting *Burdine*, 450 U.S. at 256).  Put another way, "a plaintiff can survive a motion for summary judgment … simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons."  *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 965 (11th Cir. 1997) (citations omitted).  Consequently, at this juncture it is not required that a plaintiff prove his employer was motivated by discriminatory intent.

**C.  Wrongful Termination Claim**

Generally, Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of wrongful termination based on race, Daniels must show: (1) he is a member of a protected class; (2) he was qualified for the position held; (3) he was terminated; and (4) he was replaced by a person outside of his protected class.  *See Walker v. NationsBank*

*of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).  Stebbins does not dispute that Daniels can satisfy the first, second, and third elements of his prima facie case.

However, Daniels offers no evidence that he was replaced by a person outside of his protected class or that his position was even filled after his termination.  Even if Daniels had identified a person outside of his class who replaced him, Stebbins has offered a legitimate, nondiscriminatory reason for Daniels's termination.  Stebbins argues that Winter terminated Daniels for poor work performance after observing the damaged wall.

Accordingly, Daniels has not established a prima facie case of wrongful termination.  Nor does Daniels argue that Stebbins's legitimate, nondiscriminatory reason was merely pretextual.  Therefore, Stebbins is entitled to summary judgment on this claim.

### D.  Disparate Treatment Claim

To establish a prima facie case of disparate treatment under Title VII, Daniels must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual who is not a member of his protected class.  *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).  Again, Stebbins does not dispute that Daniels can satisfy the first, second, and third elements of his prima facie case.

The Plaintiff fails to identify any coworker at Stebbins he was treated less favorably than, and he certainly does not identify a similarly situated individual who was not a member of his protected class and who was treated more favorably.  Accordingly,

Daniels does not satisfy the elements of a prima facie disparate treatment claim, and Stebbins is entitled to summary judgment on this claim as well.

### E. Hostile Work Environment Claim

To establish a prima facie case for a hostile work environment claim, Daniels must show: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected class; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under either vicarious or direct liability. *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012). The harassment must be "so severe or pervasive as to alter the conditions of employment." *Id.* (internal quotation marks and citation omitted). The plaintiff must meet both a subjective and objective test to show the harassing conduct was severe or pervasive. Thus, "[t]he burden is on the plaintiff to demonstrate that he perceived, and that a reasonable person would perceive, the working environment to be hostile or abusive." *Id.* (citation omitted). Specifically, when evaluating whether the harassment is objectively severe or pervasive, the Court looks at the totality of the circumstances and considers: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Freeman v. City of Riverdale*, 330 F. App'x 863, 865 (11th Cir. 2009).[5]

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Daniels has satisfied the first three elements of a hostile work environment claim. He is a member of a racial minority, he was subjected to unwelcome harassment by Andrews, and the epithet used was directed at Daniels's race. Thus, the Court must determine whether the harassment was both subjectively and objectively severe or pervasive so as to alter the conditions of Daniels's employment and whether Stebbins may be held liable for Andrews's behavior.

Stebbins argues that Andrews's use of the racial epithet four or five times could not have subjectively offended Daniels because he never reported it to anyone prior to his termination and that Daniels's own use of racial epithets at the plant belies his alleged offense taken to the epithet used against him. Daniels testified that he walked away from Andrews each time he used the epithet but did not tell Andrews to stop using that language or that he found the language offensive. Daniels also testified that he worked closely with Winter daily but never told Winter about the offensive utterances until after Winter fired him. However, Daniels acknowledges Winter was the appropriate person to whom he should have reported Andrews's behavior. (Doc. 43 at 15:20-25, 16:1, 26:11-19). *See Barrow v. Ga. Pac. Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (evaluating the plaintiff's failure to use his employer's procedures and policies to report racial harassment as part of the subjective inquiry into whether the plaintiff perceived his working environment to be hostile). Further, Daniels admits to using a term that could be perceived as a slur on the job site, although he considered his use of the term playful. Thus, based on Daniels's reaction to Andrews's use of the epithet and Daniels's own use of racial epithets, it is not clear he perceived his work environment to be hostile or abusive.

However, even if Daniels subjectively believed his environment to be hostile, he "has not presented evidence that the workplace was 'permeated with "discriminatory intimidation, ridicule, and insult" that [was] "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The language used by Andrews is no doubt objectively offensive.[6] But "[a]lthough offensive, such instances of racially derogatory language alone" do not necessarily alter the terms and conditions of employment. *Freeman*, 330 F. App'x at 866 (quoting *McCann*, 526 F.3d at 1379).

Frequent and consistent use of offensive language does weigh in favor of a plaintiff's hostile work environment claim even if the remarks occur over a relatively short period of time. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (holding that a coworker's use of ethnic slurs directed at the plaintiff three or four times daily over a one month period was severe and pervasive). Daniels testified that he believed Andrews used the term four or five times, although he could only recount three instances, during Daniels's employment with Stebbins. Thus, Andrews used the epithet at least once daily on the three final days of Daniels's five day employment.

Under these circumstances, Andrews's behavior was not severe or pervasive enough to create a hostile work environment claim. Racial slurs must be "so 'commonplace, overt and denigrating that they created an atmosphere charged with racial hostility.'" *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990)).

---

[6] In the Court's view, the fact that Andrews is African-American does not make the use of the word any less offensive.

Daniels admits he was not harassed by any of his other coworkers and that Andrews was the only co-worker who used the slur.  Further, Daniels does not allege Andrews's conduct caused other employees to behave negatively toward Daniels, and although offensive, Andrews's remarks were not physically threatening.  *See Harris*, 510 U.S. at 21 ("'[M]ere utterance of an ... epithet which engenders offensive feelings in [an] employee,' … does not sufficiently affect the conditions of employment to implicate Title VII.").  Nor does Daniels argue that his job performance was hindered by Andrews's slurs.

Finally, there is no basis for holding Stebbins vicariously or directly liable for Andrews's conduct.  Stebbins is not subject to vicarious liability because Andrews was not Daniels's supervisor and did not have immediate authority over Daniels.  *Miller*, 277 F.3d at 1278.  To be liable for the harassing conduct of a plaintiff's coworker rather than a supervisor, the employer must have "'[known] or should have known of the harassing conduct but failed to take prompt remedial action.'"  *Baldwin v. Blue Cross / Blue Shield of Ala.*, 480 F.3d 1287, 1302 (11th Cir. 2007) (quoting *Miller*, 277 F.3d at 1278).  There is no evidence Stebbins knew of Andrews's conduct until Daniels was terminated and informed Winter and the Georgia Power security guard of the harassment.  LaVancha promptly launched an internal investigation to determine whether any discrimination or harassment had occurred.  LaVancha was unable to determine that such harassment occurred because Daniels provided her with contradictory stories and refused to provide the names of his witnesses to further the investigation.[7]  Thus, Stebbins took prompt remedial action to Daniels's allegations.

---

[7] The Court has not relied on LaVancha's conclusions in reaching its conclusions.

Accordingly, Stebbins is entitled to summary judgment on Daniels's hostile work environment claim.

### III. CONCLUSION

For the foregoing reasons, Stebbins's motion for summary judgment is **GRANTED**.

**SO ORDERED**, this the 30th day of October, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
